IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMITRUS M. MASSEY,

              Plaintiff,

    v.

DARREN HUTSCHENREUTER, LIZZIE TEGELS,
AMANDA KRAGGNESS, KEVIN GARCEAU,
ERIN DUNAHAY, MS. BERCHARD, CAPTAIN
CARRIERE, JOHN DOE LIEUTENANT,
MR. FISCHER, KEVIN CARR, WISCONSIN
DEPARTMENT OF CORRECTIONS, and
ABC INSURANCE COMPANY,

              Defendants.

OPINION and ORDER

20-cv-159-jdp

---

Pro se plaintiff Demitrus M. Massey filed this civil action under 42 U.S.C. § 1983 against prison staff at Jackson Correctional Institution. He alleges that he was sexually harassed and assaulted by a correctional officer at the prison, and that other prison staff failed to protect him from the harm and retaliated against him after he complained about it. Massey's complaint is before the court for screening under 28 U.S.C. § 1915A. For the reasons below, Massey may proceed with constitutional and state law claims against defendants Darren Hutschenreuter, Amanda Kraggness, Kevin Garceau, and Erin Dunahay. The other defendants will be dismissed because Massey's allegations do not state a claim for relief against them.

ALLEGATIONS OF FACT

Massey alleges the following facts, which I will accept as true for purposes of screening the complaint.

Massey was incarcerated at Jackson Correctional Institution at all times relevant to his complaint. The following defendants worked at Jackson Correctional during the relevant time: Darren Hutschenreuter (correctional officer); Amanda Kraggness (unit manager); Erin Dunahay (captain); Carriere (captain); Ms. Berchard (social worker and hearing officer for inmate conduct reports); Ms. Fischer (inmate advocate for conduct report hearings); Kevin Garceau (security director); and Lizzie Tegels (warden). Massey also names as defendants a John Doe Lieutenant, Kevin Carr (secretary of DOC), Wisconsin Department of Corrections, and ABC Insurance Company.[1]

In December 2018, Massey moved onto a unit at Jackson Correctional where defendant Officer Hutschenreuter worked. From December 2018 to March 2019, Hutschenreuter flirted with Massey. (Massey does not provide many details about Hutschenreuter's conduct, but he says that Hutschenreuter sexually harassed him.) In March 2019, Hutschenreuter searched Massey's cell. Hutschenreuter rummaged through Massey's property and spread Massey's underwear on Massey's bunk, but Hutschenreuter did not disturb Massey's cellmate's property. On May 1, 2019, Hutschenreuter told Massey in a flirtatious manner that he was going to search Massey's cell again. Massey told a social worker and defendant Kraggness, the unit director, that Hutschenreuter had been sexually harassing him. The social worked emailed Kraggness and Garceau, the security director, about Massey's complaints. Neither Kraggness nor Garceau took any steps to protect Massey from further harassment by Hutschenreuter.

---

[1] Massey's complaint contains no allegations or claims against ABC Insurance Company, and Massey does not explain why he named the company as a defendant. Therefore, I am dismissing it as a defendant from this case.

On June 5, 2019, Hutschenreuter ordered Massey to move to a different cell. Hutschenreuter entered the new cell while Massey was alone in it, and he ordered Massey to bend over and read the code off of Massey's property locker. When Massey bent over to read the code, Hutschenreuter pressed his body against Massey's, pushing his penis against Massey's buttocks. Massey stood up and left the cell, and Hutschenreuter stayed in the cell smirking and giggling at Massey.

On June 8, 2019, Massey complained to psychological services about Hutschenreuter's behavior. Massey also filed an inmate complaint with the prison, a Prison Rape Elimination Act (PREA) complaint against Hutschenreuter, and a document titled "criminal complaint" with the Jackson County clerk of court.

On June 10, defendant Captain Dunahay interviewed Massey and Hutschenreuter about the incident. Hutschenreuter denied that he entered the cell while Massey was alone inside, and he denied assaulting Massey. Dunahay concluded that Massey's accusation was unfounded, and Dunahay issued Massey a conduct report for lying about staff. Defendants Berchard and Carriere conducted the hearing on the conduct report. Defendant Fischer was assigned to be Massey's inmate advocate at the hearing. Berchard and Carriere found Massey guilty of lying about staff after they reviewed video footage and concluded that the footage did not support Massey's statement that Hutschenreuter had entered the cell while Massey was alone inside. Massey received 60 days segregation as punishment. Massey appealed, asking that the video footage be reviewed again, but defendant Warden Tegels denied the appeal.

On June 30, Massey received another conduct report, written by defendant Hutschenreuter. Massey submitted an inmate complaint contending that the new conduct report was in retaliation for his complaining about being sexually assaulted by Hutschenreuter.

Massey also accused Hutschenreuter, Dunahay, and Carriere of retaliating against him and of conspiring to cover up Hutschenreuter's behavior.

On July 8, Massey contacted defendant Garceau, asking that his PREA complaint against Hutschenreuter be reopened and that charges be brought against Hutschenreuter. Garceau denied the request, stating that he had viewed the video evidence and that it did not support Massey.

On July 15, Massey was interviewed by a deputy from Jackson County Sheriff's Department. The deputy reviewed the video footage and concluded that the footage corroborated Massey's version of events. After the interview, Dunahay told Massey to contact Tegels again to ask that his appeal of the conduct report be reconsidered in light of law enforcement's conclusions about the video evidence. Massey contacted Tegels, who reinstated Massey's appeal and dismissed the conduct report based on the video evidence. Massey's PREA complaint against Hutschenreuter was reopened.

Dunahay and John Doe Lieutenant interviewed Massey as part of the PREA investigation. Dunahay told Massey that he had reviewed the video footage and wondered why Massey had stayed in the cell when Hutschenreuter entered. Dunahay asked Massey what he was doing in the cell with Hutschenreuter, and Dunahay implied that Massey had stayed in the cell voluntarily. Dunahay accused Massey of lying about what had happened in the cell and he asked Massey to change his story. John Doe Lieutenant did not attempt to stop Dunahay's questions. Massey later complained to psychological services about Dunahay's treatment of him.

In September 2019, Massey was transferred to Stanley Correctional. Dunahay was part of the program review committee that approved the transfer. Massey asked Dunahay to amend

his prison records to show that the conduct report for lying about staff had been overturned, but Dunahay refused to do so. As a result, Massey's records show that he received a conduct report for lying about staff.

ANALYSIS

Massey states that he wants to bring the following claims against defendants: (1) Hutschenreuter sexually harassed and assaulted him, in violation of the Eighth Amendment; (2) Kragness and Garceau failed to protect him from Hutschenreuter's harassment and assault, in violation of the Eighth Amendment; (2) Hutschenreuter and Dunahay retaliated against him, in violation of the First Amendment; (3) Garceau, Berchard, Carriere, and Fischer denied his right to due process under the Fourteenth Amendment; (4) John Doe lieutenant failed to intervene and protect him from Dunahay's abusive interview; and (5) defendants' actions violated Massey's rights under state common law.

## A. Sexual harassment

The Eighth Amendment prohibits cruel and unusual punishment. Most verbal harassment of an inmate by jail or prison guards does not rise to the level of cruel and unusual punishment, but harassment may be actionable when the conduct is ongoing and intended to inflict physical or psychological harm on the inmate. *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019); *Beal v. Foster*, 803 F.3d 356, 358 (7th Cir. 2015). In this instance, Massey alleges that defendant Hutschenreuter flirted with him and sexually harassed him for months. Hutschenreuter then sexually assaulted him by pressing his body against Massey's buttocks while Massey was bent over. These allegations are sufficient at the pleading stage to state a

claim that Hutschenreuter engaged in cruel and unusual punishment by intending to inflict psychological harm on Massey.

Massey also contends that defendants Kragness and Garceau should be held liable for failing to protect him from Hutschenreuter's harassment and assault. Under the Eighth Amendment, prison officials must take reasonable measures to guarantee the safety of inmates. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a failure-to-protect claim under the Eighth Amendment, an inmate must allege facts suggesting that (1) that there was an excessive risk to the inmate's health or safety; and (2) that the official was aware that a substantial risk of serious harm existed, and chose to disregard the risk. *Id.* Massey alleges that he told his social worker about Hutschenreuter's ongoing sexual harassment and that the social worker reported the harassment to Kragness and Garceau. Kragness and Garceau had authority over Hutschenreuter and could have taken steps to protect Massey from further harassment, but they failed to do so. These allegations support a claim that Garceau and Kragness failed to protect Massey from a substantial risk that he would be sexually harassed, or worse, in the future. Accordingly, Massey may proceed with Eighth Amendment claims against Hutschenreuter, Garceau, and Kragness.

## B. Retaliation

Massey contends that defendants Hutschenreuter and Dunahay retaliated against him after he reported that Hutschenreuter had sexually assaulted him. To state a First Amendment retaliation claim, a plaintiff must allege: (1) that he was engaged in a constitutionally protected activity; (2) that defendants took one or more retaliatory actions that would deter an average prisoner from engaging in the protected activity; and (3) that plaintiff's protected activity was one of the reasons defendants took action against the plaintiff. *Gomez v. Randle*, 680 F.3d 859,

866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009). Massey's allegations satisfy these requirements. His filing of an inmate grievance and PREA complaint about Hutschenreuter's actions was conduct protected by the First Amendment. Massey's allegations also suggest that defendants Dunahay and Hutschenreuter issued conduct reports to Massey, and that Dunahay refused to remove information about the conduct report from Massey's prison records, in retaliation for Massey's complaints. Because these actions might deter an ordinary prisoner from filing complaints in the future, Massey may proceed with retaliation claims against Dunahay and Hutschenreuter.

## C. Due process

Massey contends that defendants Berchard, Carriere, and Fischer violated his due process rights during the hearing on the conduct report he received for lying about staff. He contends that because video footage showed that he told the truth about Hutschenreuter entering the cell while Massey was alone in it, Berchard and Carriere should have concluded that he was not guilty of lying about staff. In addition, he contends that Fischer should have done a better job as an inmate advocate at the hearing. Massey also contends that Garceau violated his due process rights by closing his PREA complaint after he was found guilty of lying about staff.

When an inmate raises a due process claim related to a disciplinary proceeding, he must demonstrate that he was deprived of a liberty interest and that the procedures that he was afforded were constitutionally deficient. *Lisle*, 933 F.3d at 720. Massey's allegations fail to satisfy either element of a due process claim.

On the first prong, a prisoner's placement in disciplinary segregation may implicate a liberty interest, depending on the duration and conditions of segregation. *Townsend v. Cooper*,

7

759 F.3d 678, 687 (7th Cir. 2014); *Townsend v. Fuchs*, 522 F.3d 765, 768 (7th Cir. 2008).

Massey alleges that he was punished with 60 days segregation as a result of the conduct report,

though it is not clear how many days he actually served. The punishment was issued on July 1

and was overturned later that month. Even if Massey had served the entire 60-day sentence,

his sentence was too short to implicate due process, as he does not allege that the conditions

of segregation were unusually harsh. *See Fuchs*, 522 F.3d at 770–71 (59-day placement in

segregation did not implicate liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir.

2005) (two-month placement in segregation did not implicate liberty interest); *Lekas v. Briley*,

405 F.3d 602, 612 (7th Cir. 2005) (three-month placement in segregation did not implicate

liberty interest); *Obriecht v. Raemisch*, 565 F. App'x 535, 539–40 (7th Cir. 2014) (78-day

confinement in segregation with mattress placed directly on wet floor did not implicate liberty

interest).

On the second prong, Massey has not alleged facts showing that the process afforded

him was constitutionally deficient. In the context of a prison disciplinary proceeding, due

process requires only that the prisoner receive advance written notice of the charges, the chance

to present testimony and documentary evidence to an impartial decisionmaker, and a written

explanation, supported by at least some evidence in the record, for any disciplinary action

taken. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). Massey received notice of the

conduct report, a hearing before decisionmakers with no obvious bias against him, and a written

explanation for the decision. Prisoners do not have a constitutional right to an effective inmate

advocate. And although Massey argues that the evidence did not support the finding that he

lied, the decisionmakers could have believed Hutschenreuter's testimony that he did not

sexually assault Massey, regardless whether the video footage showed Hutschenreuter entering

the cell while Massey was inside. Moreover, the conduct report was later overturned, showing that Massey received adequate process. Therefore, Massey may not proceed with a due process claim based on the Bercard's and Carriere's actions at the disciplinary hearing.

Massey also cannot proceed with a due process claim against Garceau. Garceau closed Massey's PREA complaint for a brief period, after Massey was found guilty of lying about staff. Massey's complaint was reopened and investigate as soon as Massey's conduct report was overturned. Nothing about these allegations implicates Massey's due process rights.

**D. John Doe Lieutenant**

Massey contends that a lieutenant violated his constitutional rights by failing to intervene while Dunahay was questioning him about the incident with Hutschenreuter. Massey argues that Dunahay's questioning was abusive and that the lieutenant should have done something to stop Dunahay's abuse. But Massey's allegations do not support any constitutional claim against the lieutenant. Massey's description of Dunahay's questioning suggests that Dunahay did not believe Massey's version of events, but Massey's allegations do not show that Dunahay was trying to harass Massey or inflict psychological harm on him. Because Dunahay's questions did not amount to cruel and unusual punishment, the lieutenant was not obligated by the constitution to intervene.

**E. State law claims**

Massey also raises several state common law claims against defendants, and he says that he satisfied all of Wisconsin's notice requirements. Therefore, I will consider his state law claims below.

### 1. Assault and battery

Massey contends that Hutschenreuter's conduct constituted the tort of assault and battery. Under Wisconsin law, the elements of a civil assault and battery claim are the unlawful and intentional subjection of another to an offensive bodily contact. Wis JI—Civil 2010; *McCluskey v. Steinhorst*, 173 N.W.2d 148, 151–52 (Wis. 1970). Massey's allegations that Hutschenreuter pressed his penis into Massey's buttocks without Massey's consent are sufficient to state a claim for assault and battery.

### 2. Intentional infliction of emotional distress

Massey contends that the actions taken by Hutschenreuter, Dunahay, Garceau, Berchard, and Carriere support intentional infliction of emotional distress claims. However, to recover for intentional infliction of emotional distress under Wisconsin law, a plaintiff must show that (1) the conduct was intended to cause emotional distress; (2) the conduct was extreme and outrageous; (3) the conduct was the cause of the person's emotional distress; and (4) the emotional distress was extreme and disabling. *Terry v. Journal Broad. Corp.*, 2013 WI App 130, ¶ 42, 351 Wis. 2d 479, 840 N.W.2d 255; WIS. JI–CIVIL 2725.

With the exception of the allegations about Hutschenreuter, Massey's allegations do not suggest that any other defendant engaged in extreme or outrageous conduct intended to cause Massey emotional distress. And even if I agreed that Hutschenreuter's conduct was extreme, outrageous, and was intended to cause Massey emotional distress, Massey has not alleged that he suffered emotional distress that was extreme and disabling. Therefore, he may not proceed with any intentional infliction of emotional distress claim.

### 3. Defamation

Massey contends that Hutschenreuter defamed him by lying about the sexual assault, and that Garceau, Dunahay, Berchard, and Carriere defamed him when they made false statements about what the video footage showed. To state a claim for common law defamation under Wisconsin law, a plaintiff must allege: (1) a false statement; (2) communicated by speech, conduct, or in writing to a person other than the person defamed; (3) that was unprivileged and tends to harm one's reputation. *In re Storms v. Action Wisconsin Inc.*, 2008 WI 56, ¶ 37, 309 Wis. 2d 704, 750 N.W.2d 739.

Massey's allegations do not support a defamation claim against any defendant. Assuming these defendants made false statements, Massey has not alleged that they were unprivileged. The statements were made in the context of investigating a conduct report inside the prison. *See Semons v. Wolf*, No. 19-CV-1595, 2020 WL 1235195, at *3 (E.D. Wis. Mar. 13, 2020) (finding that false statements in a conduct report were privileged). In addition, Massey's conduct report was later overturned, and he has failed to allege any facts showing that his reputation in the prison or community has been damaged as a result of the false statements.

### 4. Negligent supervision

Finally, Massey contends that defendants Tegels, Carr, and the Department of Corrections are liable for negligent supervision under Wisconsin law. To state a claim for negligence supervision, a plaintiff must allege that an employer's negligence caused its employee's wrongful act. *Doe v. Archdiocese of Milwaukee*, 2005 WI 123, ¶ 44, 284 Wis. 2d 307, 700 N.W.2d 180. Massey's allegations do not meet this standard. He argues generally that Tegels and Carr should have supervised their employees better, but he does not allege any facts

11

explaining specifically how Tegels and Carr were negligent or why their negligence caused the other defendants' alleged wrongful acts. Therefore, Massey may not proceed with a negligent supervision claim.

ORDER

IT IS ORDERED that:

1. Plaintiff Demitrus M. Massey is GRANTED leave to proceed on his claims that (1) defendant Darren Hutschenreuter violated his Eighth Amendment rights and committed the common law tort of assault and battery by sexually harassing and assaulting Massey; (2) defendants Amanda Kraggness and Kevin Garceau violated his Eighth Amendment rights by failing to protect him from Hutschenreuter; and (3) defendants Hutschenreuter and Erin Dunahay violated his First Amendment rights by retaliating against him.

2. Plaintiff is DENIED leave to proceed on any other claim. Defendants Captain Carriere, Ms. Berchard, Ms. Fischer, John Doe Lieutenant, Lizzie Tegels, Kevin Carr, Wisconsin Department of Corrections, and ABC Insurance Company are DISMISSED.

3. Pursuant to an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being sent today to the Attorney General for service on defendants. Plaintiff should not attempt to serve defendants on his own at this time. Under the agreement, the Department of Justice will have 60 days from the date of the Notice of Electronic Filing of this order to answer or otherwise plead to plaintiff's complaint if it accepts service for defendants.

4. For the time being, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer or lawyers who will be representing defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that he has sent a copy to defendants or to defendants' attorney.

5. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

6. If plaintiff is transferred or released while this case is pending, it is plaintiff's obligation to inform the court of his new address. If he fails to do this and

defendants or the court are unable to locate him, his claims may be dismissed for his failure to prosecute them.

Entered May 14, 2020.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge
