IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMITRUS M. MASSEY,

                Plaintiff,

  v.                                               OPINION and ORDER

DARREN HUTSCHENREUTER,
AMANDA KRAGNESS, KEVIN GARCEAU,         20-cv-159-jdp
and ERIN DUNAHAY,

                Defendants.

---

Pro se plaintiff Demitrus M. Massey is proceeding on constitutional and state law claims based on his allegations that he was sexually harassed and assaulted by a correctional officer at the prison, and that other prison staff failed to protect him from the harm and retaliated against him after he complained about it. Before the court is defendants' motion for summary judgment, Dkt. 18, and Massey's renewed motion for assistance in recruiting counsel, Dkt. 35. In considering defendants' motion, I have viewed the evidence in the light most favorable to Massey. But Massey has failed to submit evidence showing that any defendant violated his constitutional or state law rights, so I will grant defendants' motion.

I will deny Massey's renewed motion for assistance in recruiting counsel. This case was not complicated, and Massy provided a clear and thorough response to defendants' motion for summary judgment. Massey's claims ultimately fail because the evidence does not support them, not because he needed assistance from counsel.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

**A. The parties and background**

Massey was incarcerated at Jackson Correctional Institution at all times relevant to this case. Defendants worked at Jackson Correctional during the relevant time: Darren Hutschenreuter was a correctional officer; Amanda Kragness was a unit manager; Kevin Garceau was the security director; and Erin Dunahay was a captain and Prison Rape Elimination Act (PREA) investigator.

**B. Officer Hutschenreuter investigates Massey and issues conduct report**

Inmate cells at Jackson are typically searched by correctional officers once a month. When searching a cell, correctional officers are supposed to search all inmate personal belongings, including clothing. Defendant Officer Hutschenreuter searched Massey's cell once each month in March, April, and May 2019. During the April and May searches, Hutschenreuter found documents that appeared to contain plans for starting a prostitution business, defrauding people, and concealing money. Hutschenreuter also found a letter instructing the recipient to lie on her prison visitor forms, and another letter instructing the recipient how to defraud bank institutions. Hutschenreuter asked Massey about the documents, and Massey said he was just giving financial advice.

Hutschenreuter began an investigation of Massey. He reviewed Massey's emails, and he found evidence that Massey had been communicating through social media accounts, which was against prison rules. On June 27, 2019, Hutschenreuter issued Massey a conduct report for enterprises and fraud, disobeying orders, unauthorized forms of communication, and lying. Massey waived his right to contest the conduct report and accepted an uncontested major disposition of 60 days disciplinary separation.

**C. Massey accuses Hutschenreuter of sexual harassment**

Meanwhile, Massey complained to defendant Kragness, the unit manager, that an officer was harassing him. Massey told Kragness that when his cell was searched in April 2019, an officer had left all of Massey's underwear turned inside out on his bunk, but the officer had not disturbed his cellmate's property. Massey also stated that the same officer smirked and giggled at him, read his mail, and gave him conduct reports for things that other inmates got away with. Kragness did not think that Massey's allegations rose to the level of harassment. She told him that officers are required to search inmate personal belongings, including clothing. Kragness later confirmed that Hutschenreuter was the officer who had searched Massey's cell, and she notified her supervisors that Massey wanted to file a PREA claim.

Massey also told a social worker that he was being harassed by an officer who searched his cell, that he was afraid of the officer, that his complaints were not being taken seriously, and that he wanted to be moved to a different unit. The social worker reported Massey's complaints to defendants Kragness and Garceau, but she stated that she did not think Massey's concerns supported opening a PREA investigation. Kragness forwarded the social worker's message to her superiors. Garceau was not worried about Massey's description of the cell searches, because he expected that any officer searching an inmate's cell would need to search through the inmate's personal property, including the inmate's underwear.

On May 21, 2019, the social worker again emailed Kragness, stating that Massey had asked about his PREA complaint and had requested that an officer other than Hutschenreuter search his cell. Kragness told the social worker that if Massey contacted her again, she should tell him that security staff has the right to search his cell, and that he should discuss his security issues with security staff. Kragness also stated that Massey had not identified any concerning

3

behavior by Hutschenreuter that would support a PREA complaint, but that if he had a "PREA concern," he could talk to a security supervisor.

**D. Massey's sexual assault allegations**

On June 5, 2019, Massey agreed to move to a different cell within the same unit. Officer Hutschenreuter assisted with the move, and with changing Massey's locker padlock from the old cell to the new one. Video footage from June 5 shows that Hutschenreuter stopped by Massey's new cell three times. Neither Massey nor Hutschenreuter remember why Hutschenreuter stopped by the first time. During his second visit, Hutschenreuter asked for the numbers from Massey's padlock. Hutschenreuter did not enter the cell during the first or second visits. A few minutes later, Hutschenreuter returned a third time, stated that Massey had given him the wrong padlock numbers, and asked again for the numbers on the padlock. Massey walked to the back of the cell to where the padlock was. Hutschenreuter then entered the cell and walked to where Massey was, near the padlock. That area of the cell is small and narrow.

According to Massey, he tried to move around Hutschenreuter so that Hutschenreuter could get the numbers himself. Massey says that as he passed Hutschenreuter, Hutschenreuter rubbed up against him as they passed each other. Massey says that he was wearing very thin shorts at the time, and that he thought he felt Hutschenreuter's penis as they passed each other. Massey testified at his deposition that the "brush-up" lasted "like two seconds, a second, and then Hutschenreuter laughed, and he giggled like something was funny." Dkt. 14, at 10. Hutschenreuter then got the numbers off the padlock and left. (Hutschenreuter does not remember entering Massey's cell, but states that if he did, he did not intentionally brush against Massey.)

**E. PREA investigation**

On June 8, 2019, Massey submitted a psychological service request stating, "I feel like I have been deprived of my manhood. I don't have anybody to talk to about this situation. I have been sexually assaulted by a guard and I can't talk to people around here about it because all they are going to do is laugh and not take me serious." Massey also filed an inmate complaint around the same time, alleging that he had been sexually assaulted by Hutschenreuter on June 5, 2019. Psychological services notified defendant Dunahay, the PREA investigator. Defendant Garceau was also notified. Dunahay contacted Massey, told him about victim services, and told him that a social worker and someone from psychological services would contact him. Dunahay also told Massey that his allegations would be investigated. Massey was transferred to different unit pending the outcome of the investigation.

Dunahay opened a PREA investigation into Massey's allegations. She interviewed Massey, who told her that Hutschenreuter had pushed up against him and put his penis against Massey's buttocks, and that afterward, Hutschenreuter had a smirk on his face. Massey told Dunahay that he had talked to two other inmates about the incident. Dunahay interviewed the other inmates, who reported that Massey had complained to them about Hutschenreuter searching his cell and reading his mail. One of the inmates said that he saw Hutschenreuter go into Massey's cell on the day of the alleged sexual assault.

Dunahay interviewed Hutschenreuter, who stated that he had helped change Massey's locks on June 5, but that he did not enter Massey's cell and did not rub his penis against Massey's buttocks. Hutschenreuter told Dunahay that if he had needed to enter the cell, he would have asked Massey to leave first. Hutschenreuter told Dunahay that Massey was

probably retaliating against him for the conduct reports he had issued and the ongoing investigation into Massey's illegal activities.

Dunahay asked to review surveillance footage from Massey's unit from June 5. Massey had told her that the assault happened around 9:50 a.m., and Dunahay thought that she was reviewing footage from 9:00 to 11:00. However, the footage that was provided to Dunahay by a lieutenant stopped before 9:50 a.m., and it did not include the period during which Hutschenreuter had entered Massey's cell. Dunahay was not aware that she had reviewed incomplete footage, and she concluded (wrongly) that Hutschenreuter had never entered Massey's cell on the relevant date. Because she could see Hutschenreuter's body at all times on the video, she concluded that he did not sexually assault Massey. On June 24, 2019, Dunahay closed the PREA investigation, concluding that Massey's allegations were unfounded.

### F. Dunahay issues Massey a conduct report

Dunahay concluded that Massey had falsely accused Hutschenreuter of sexual assault, so she issued Massey a conduct report for lying about staff. Massey's written statement, psychological service request, and the video surveillance footage were submitted to support the conduct report. (Neither Hutschenreuter nor Garceau were involved in issuing the conduct report.) On July 1, 2019, a hearing was held on conduct report. The hearing committee (made up of non-defendants) found Massey guilty of lying about staff, and Massey was ordered to serve 60 days in disciplinary separation. On July 5, 2019, Massey appealed the conduct report, and the decision was affirmed.

### G. Dunahay reopens PREA investigation

On July 11, 2019, Massey notified Garceau that a member of security staff had confirmed that he saw Hutschenreuter enter Massey's cell while Massey was still inside. The

staff member had then pulled the correct video footage which showed Hutschenreuter entering Massey's cell. Massey stated that he was going to obtain counsel to investigate the incident if Garceau refused to do so. Garceau responded, "We are looking into it."

Around the same time, Dunahay saw the video footage showing Hutschenreuter inside Massey's cell for approximately 12 seconds. Hutschenreuter then exited the cell and went back to the officer station, and Massey walked out afterward. Dunahay immediately contacted the warden and advised her to dismiss Massey's conduct report, because the video footage corroborated Massey's statement that Hutschenreuter entered the cell while Massey was inside. The warden overturned the conduct report and advised staff to update Massey's records accordingly. The warden also directed staff to reopen the PREA investigation to allow for a thorough review of the new information.

Dunahay interviewed both Massey and Hutschenreuter for a second time. Massey repeated his accusation that Hutschenreuter entered his cell and pressed his penis against his body. Hutschenreuter emphatically denied touching Massey, and again stated that Massey was probably retaliating for Hutschenreuter's ongoing investigation of Massey. After learning of the additional camera footage, Hutschenreuter stated that he must have entered the cell, but that he did not remember doing so. Hutschenreuter stated that the only reason why he would not have asked Massey to exit the cell before entering was because removing padlocks was a routine task and he must have gotten complacent.

Dunahay completed her investigation on July 24, 2019. She changed her conclusion on Massey's PREA complaint from "unfounded" to "unsubstantiated," meaning that it could not be proven one way or another whether the incident happened.

ANALYSIS

Massey is proceeding on the following claims:

1. Defendant Darren Hutschenreuter violated his Eighth Amendment rights and committed the common law tort of assault and battery by sexually harassing and assaulting Massey;

2. Defendants Amanda Kragness and Kevin Garceau violated his Eighth Amendment rights by failing to protect him from Hutschenreuter; and

3. Defendants Hutschenreuter and Erin Dunahay violated his First Amendment rights by retaliating against him.

Defendants have moved for summary judgment, contending that Massey cannot prove any of his claims against them.

**A. Sexual harassment and assault**

Massey alleged in his complaint that defendant Hutschenreuter flirted with him and sexually harassed him for months, and then sexually assaulted him by pressing his penis against Massey's buttocks while Massey was bent over. Based on these allegations, Massey was granted leave to proceed on a claim under the Eighth Amendment, which prohibits cruel and unusual punishment. Prison staff violates the Eighth Amendment if they perform some action that is "intended to humiliate the victim or gratify the assailant's sexual desires." *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012). In addition, although most verbal harassment of an inmate by jail or prison guards does not rise to the level of cruel and unusual punishment, harassment is actionable when the conduct is ongoing and intended to inflict physical or psychological harm on the inmate. *Lisle v. Welborn*, 933 F.3d 705, 718 (7th Cir. 2019); *Beal v. Foster,* 803 F.3d 356, 358 (7th Cir. 2015). The allegations in Massey's complaint suggested that Hutschenreuter engaged in cruel and unusual punishment by intending to inflict psychological harm on Massey.

8

The evidence now shows that Hutschenreuter did not violate Massey's Eighth Amendment rights. Massey says that Hutschenreuter sexually harassed him by searching his property more thoroughly than his cellmate's property and leaving Massey's underwear turned inside out. He says that Hutschenreuter sometimes smirked or giggled while talking to him. No reasonable jury could conclude that such conduct constituted intentional and ongoing infliction of physical or psychological harm.

Nor could a reasonable jury find that Hutschenreuter had sexually assaulted Massey. At his deposition, Massey described the alleged "sexual assault" as Hutschenreuter brushing up against Massey for one or two seconds while passing through a narrow part of Massey's cell to retrieve numbers from Massey's lock. These are far from the types of allegations that courts have held could constitute an Eighth Amendment violation. *See, e.g.*, *Washington*, 695 F.3d at 642 (guard gratuitously fondled inmate's testicles and penis for several seconds).

For the same reasons, Massey's state law assault and battery claim fails. To prove an assault and battery based on offensive bodily contact, Massey would have to show that Hutschenreuter intentionally caused offensive contact with Massey. Wis JI-CIVIL 2005.5. "Offensive bodily contacts" are "contacts which are offensive to a reasonable sense of personal dignity, contacts which are unwarranted by the social usages prevalent at the time and place at which they are inflicted." *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 338, 565 N.W.2d 94, 104 (1997). A fully clothed person briefly brushing against someone as he passes by in a narrow space does not constitute an offensive contact. Hutschenreuter is entitled to summary judgment on Massey's Eighth Amendment and state law claim.

Massey was also allowed to proceed on claims that defendants Kragness and Garceau violated his Eighth Amendment rights by failing to protect him from Hutschenreuter's

9

harassment and assault. But because Massey has submitted no evidence to support his allegation that Hutschenreuter sexually harassed and assaulted him, his failure-to-protect claims against Kragness and Garceau also fail.

## B.  Retaliation

Massey contends that defendants Hutschenreuter and Dunahay issued him conduct reports in retaliation for him reporting that Hutschenreuter had sexually assaulted him. To succeed on these claims, Massey would have to show: (1) that he was engaged in a constitutionally protected activity; (2) that Hutschenreuter and Dunahay took one or more retaliatory actions that would deter an average prisoner from engaging in the protected activity; and (3) that Massey's protected activity was one of the reasons Hutschenreuter and Dunahay took actions against him. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Bridges v. Gilbert*, 557 F.3d 541, 556 (7th Cir. 2009).

Massey's retaliation claim against Dunahay fails on the second prong. Dunahay issued Massey a conduct report (charging him with lying about an employee) because she concluded that the video evidence refuted Massey's sexual assault allegations. But as soon as Dunahay realized that she had not seen all of the relevant surveillance footage, she notified the warden that the conduct report should be dismissed. A dismissed conduct report cannot support a retaliation claim. *Bridges*, 557 F.3d at 555 ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action.").

Massey's retaliation claim against Hutschenreuter fails on the third prong. The undisputed evidence shows that Hutschenreuter issued Massey a conduct report (for enterprises and fraud, disobeying orders, unauthorized forms of communication, and lying) based on his April through June investigation into Massey's plans to engage in illegal activities.

The conduct report was supported by legitimate reasons, and no reasonable jury could conclude that Hutschenreuter issued conduct report in retaliation for Massey's complaints about the alleged sexual harassment.

In sum, Massey has failed to present evidence to support any of his claims, so defendants' motion for summary judgment will be granted in full.

ORDER

IT IS ORDERED that:

1. Plaintiff Demitrus M. Massey's motion for assistance in recruiting counsel, Dkt. 35, is DENIED.

2. The motion for summary judgment filed by defendants Darren Hutschenreuter, Amanda Kragness, Kevin Garceau, and Erin Dunahay, Dkt. 18, is GRANTED.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered August 30, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge